**EXHIBIT 9**

Westlaw.                                                                NewsRoom
4/27/07 SFCHR A1                                                         Page 1

4/27/07 S.F. Chron. A1
2007 WLNR 7966892

San Francisco Chronicle (CA)
Copyright 2007 San Francisco Chronicle

April 27, 2007

Section: NEWS

The human face of immigration raids in Bay Area : Arrests of parents can deeply traumatize children caught in the fray, experts argue

Tyche Hendricks

Immigration agents arrested siblings Victor and Elvira Mendoza, 21 and 17, when it turned out the fugitive they were looking for no longer lived at the Mendozas' home. Officers detained 6-year-old U.S. citizen Kebin Reyes for 12 hours when they arrested his father as an illegal immigrant.

These and many other families across the Bay Area and the nation were turned upside down this year by Operation Return to Sender, a federal immigration crackdown begun last May. The raids focus on illegal immigrants who have ignored deportation orders, but 37 percent of the 18,149 people arrested nationwide through Feb. 23 were not wanted fugitives.

Mental health experts say the raids are traumatizing children. Legal scholars and public officials are raising constitutional questions about the way the raids are carried out and about their impact on communities as a whole. And immigrant advocates say changes in immigration law -- including tougher provisions enacted in 1996 -- leave little room for illegal immigrants to correct their status.

"They (the raids) are putting some teeth back in immigration law," said Tim Aitken, deputy director for detention and removal operations in the San Francisco office of the U.S. Immigration and Customs Enforcement agency. "Our focus is, we want to go after the worst of the worst. ... But we can't be blind to someone who doesn't have lawful status in the United States."

The American Civil Liberties Union and the Lawyers' Committee for Civil Rights sued federal authorities in San Francisco on Thursday on behalf of Kebin Reyes, now 7, saying agents violated the child's civil rights when they took him into custody. Attorneys charge that the federal government violated Kebin's Fourth and Fifth

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

4/27/07 SFCHR A1                                                                          Page 2

Amendment rights to liberty and to being secure in his own home.

When agents arrested his father, Guatemalan-born Noe Reyes, on March 6, they would not allow him to call relatives who could take charge of Kebin and instead held the boy until an alarmed uncle heard about the arrest from neighbors, Noe Reyes and his lawyers said Thursday. "He went with his dad so he wouldn't be left home alone," said immigration agency spokeswoman Lori Haley. "We work with the families to find someone to take care of the child."

Noe Reyes, the boy's sole parent in the United States, who was released April 18, said Kebin has been fearful and withdrawn since the arrest and suffers recurring nightmares.

Lawyers and legal scholars have raised constitutional concerns about how the raids are being conducted. They accuse agents of gaining access to homes by insufficiently identifying themselves and bearing warrants that often contain inaccurate addresses for the fugitives they're seeking. Elected officials also said that when federal agents announce that they are "police," it undermines local law enforcement. And many people have questioned the right of agents to interrogate people not named in warrants about their own immigration status.

But immigration officials said questioning people who live with or associate with the targets of warrants meets the federal standard of "reasonable suspicion" that those people might be illegal immigrants.

"If agents are going to the home of a target they believe is in the country illegally, they could reasonably suspect that others in the house might be here illegally as well," said Haley.

Under federal law as amended in 1996, agents have the authority to interrogate anyone "believed to be an alien" about his or her right to be in the country.

Blake Chisam, legal counsel to the House Judiciary Committee's subcommittee on immigration, said some rationales for reasonable suspicion might not stand up in court.

"You'd have to have an articulable basis," he said. "I don't think profiling would work."

Immigrant advocates agree.

"Just because someone is Latino or has an accent doesn't mean an officer has reasonable suspicion they are undocumented," said Lawyer's Committee staff attorney Philip Hwang. "Even being in the household where one occupant is undocumented doesn't create reasonable suspicion, because there are legion mixed-status households."

San Rafael Mayor Al Boro, Richmond Police Chief Chris Magnus and San Francisco District Attorney Kamala Harris -- among many officials here and across the country -- have said agents' practice of identifying themselves as police damages the trust local law enforcement agencies have built in immigrant communities.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

4/27/07 SFCHR A1                                                    Page 3

Immigration officials defend their use of the word "police," saying all law enforcement agents have that right. But Hwang said residents might open their doors because they believe the agents are local police concerned for their safety. "It can't be consent unless the individual knows who they're letting into their home," Hwang said.

Kevin Johnson, an immigration law specialist at the UC Davis School of Law, said it seems like agents don't care whether the information in their warrants is wrong if it enables them to make arrests.

"That seems like an abuse of the warrant," Johnson said, "an abuse of the legal process."

Professor Rachel Moran at UC Berkeley's Boalt Hall School of Law said a warrant naming a specific individual doesn't authorize agents to search that person's home or question other residents there.

Victor and Elvira Mendoza were detained for weeks after agents arrived at their San Pablo home in January to serve a warrant for someone who didn't live there. The brother and sister had come to the Bay Area from Mexico in 2003 to be reunited with their parents, legal U.S. residents, whom they had last seen when Victor was 13 and Elvira 9.

Victor has studied English and has honed his skills as a clown, performing at schools and nursing homes and on the St. Paul's Catholic Church float in San Pablo's Cinco de Mayo parade, where he plans to appear again this year. And Elvira pulled down straight A's at De Anza High School, where she is preparing to graduate in June.

"Everyone else in our family has papers except my sister and me," said Victor Mendoza. "When we were in Mexico, we tried to get papers to come but we couldn't, so we crossed the border without permission. It's kind of hard to be without your parents."

Now the siblings await hearings on their fate before an immigration judge. Their lawyer, Stephen Coghlan of San Francisco, said many factors conspire against Mexican citizens gaining legal status here.

The wait for immigration visas for Mexican family members of U.S. citizens and permanent residents is six to 19 years. And the 1996 changes in the law greatly tightened the standards by which illegal immigrants can stave off deportation and get a "green card."

Undocumented immigrants now must prove they have been in the country 10 years and have good moral character, and their deportation must be deemed to cause a relative "exceptionally unusual hardship," a threshold almost impossible to meet, Coghlan said.

"It was a complete sea change," said Coghlan. "It's heartbreaking. Victor's a nice, articulate, soft-spoken guy who's had no contact with the law. ... He would be a fine, upright, outstanding citizen, a productive member of society. ... They call them illegal, but there's no way to be legal."

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Bay Area residents have said farewell to devoted parent volunteers, talented soccer coaches and close friends. Scores of Berkeley residents mourned the departure of Felipe and Norma Espinoza, who lived undocumented in the United States for two decades and built a much richer life for their three boys than they would have had in their hamlet in Michoacan, Mexico.

The Espinozas were placed in deportation proceedings before the current federal campaign. They hired a lawyer to try to gain legal residency, but the lawyer -- later disbarred -- didn't show up for court appearances after he took their money. In February, the couple told their sons to say goodbye to their classmates and pack their bags. The court had ordered them deported and the family returned to the two-room house where Felipe was born.

Felipe, a former steelworker, said in a phone interview that he hasn't yet found work, even as a field hand. Felipe Jr., 14, said he is studying math two years behind the geometry class he left at Berkeley High School and wishes he could return to the Bay Area, even without his parents.

Child psychology experts say children suffer most from the disruption of armed agents coming into their homes and taking away their parents -- and sometimes themselves. Children can experience stress, depression and anxiety disorders, said Amana Ayoub, a psychologist at the Center for Survivors of Torture, located in San Jose, who is familiar with Kebin Reyes' experience.

Psychiatrist Dr. Alicia Lieberman, director of the Child Trauma Research Project at UCSF, said children who witness their parents being taken into custody lose trust in their parents' ability to keep them safe and begin to see danger everywhere.

"Over and above the sense of terror about, 'What will happen to my mommy and daddy and what will happen to me?' the common thread is, 'We cannot trust the authorities,' " Lieberman said.

Many adults have responded the same way, said Evelyn Sanchez, advocacy coordinator with the Bay Area Immigrant Rights Coalition.

"We've been in touch with a lot of families that have been affected by the raids, and understandably they are scared," Sanchez said. "Being undocumented is no light matter anymore, and they are really taking cover."

Kebin Reyes' lawyers also said immigration officials need clear procedures to ensure children's welfare. Agents are supposed to allow detainees to arrange care for their children, according to a letter Karyn Lang, a top immigration official, wrote March 14 to Rep. Zoe Lofgren, D-San Jose, who leads the House's immigration subcommittee.

Elected officials who support the raids say the onus for protecting children is on their immigrant parents.

"It's unfortunate that families become detached," said Kurt Bardella, spokesman for Rep. Brian Bilbray, R-Carlsbad (San Diego County), who chairs the House

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

4/27/07 SFCHR A1                                                                Page 5

Immigration Reform Caucus. "But when someone enters this country illegally, and they have a child here, they have made conscious decisions while their status in this country is uncertain. They are subjecting themselves and their families to the risk that the law might be enforced."

Sen. Dianne Feinstein of California last month wrote to Homeland Security Secretary Michael Chertoff, who oversees the immigration enforcement agency, expressing concern about how children are being treated during raids.

"I believe the federal government has a special obligation to ensure that the children of the undocumented individuals are treated humanely and left with appropriate caregivers," Feinstein wrote.

Rocío Avila, a lawyer for La Raza Centro Legal in San Francisco, said an adult client of hers was detained during a raid even though he is a U.S. citizen.

"He attempted to let them know he was a U.S. citizen, and they didn't initially believe him," she said. "He asked, 'Who are you here to see? Do you have a warrant?' They handcuffed him immediately and put him on the floor."

The man, fearful of publicizing his name, is considering legal action.

Elizabeth Larose Dunn, who leads Marin Montessori School, said a sixth-grade student whose parents were arrested in immigration raids in March and did not want to be identified by name is a high achiever and "beloved in the school."

"This is America, a place we'd like to think all of our children are safe," she said. "I'm so sad about this on a personal level." --------------------------------
-------

The arrests

In a crackdown begun last May against illegal immigrants who ignored deportation orders, including convicted criminals, U.S. Immigration and Customs Enforcement agents arrested 18,149 people by Feb. 23.

More than one-third were people the agents encountered and independently suspected were illegal immigrants; officials are calling these "collateral" arrests.

Here's a breakdown of total and "collateral" arrests in California and the country:

National: 18,149 arrests -- 36.9 percent collateral (6,696)

Los Angeles region: 1,198 arrests -- 41.5 percent collateral (497)

San Diego region: 511 arrests - 56.6 percent collateral (289)

San Francisco region: 1,423 arrests -- 44.8 percent collateral (638)

Source: Associated Press (Immigration and Customs Enforcement data covers May 26,

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

4/27/07 SFCHR A1                                                                Page 6



2006-Feb. 23, 2007)

---- INDEX REFERENCES ----

COMPANY: AMERICAN CIVIL LIBERTIES UNION

NEWS SUBJECT: (Legal (1LE33); Children (1CH89); Social Issues (1SO05); Health & Family (1HE30); Government (1GO80); Police (1PO98); Parents & Parenting (1PA25); Crime (1CR87); Judicial (1JU36); Criminal Law (1CR79); Economics & Trade (1EC26))

INDUSTRY: (Smuggling & Illegal Trade (1SM35))

REGION: (Americas (1AM92); North America (1NO39); Mexico (1ME48); USA (1US73); California (1CA98))

Language: EN

OTHER INDEXING: (AMERICAN CIVIL LIBERTIES UNION; BERKELEY; BERKELEY HIGH SCHOOL; BOALT HALL SCHOOL OF LAW; CATHOLIC CHURCH; CHILD TRAUMA RESEARCH; COMMITTEE FOR CIVIL; CUSTOMS ENFORCEMENT; FELIPE; HOUSE; HOUSE IMMIGRATION REFORM CAUCUS; HOUSE JUDICIARY COMMITTEE; IMMIGRATION; KEBIN; KEBIN REYES; LA RAZA CENTRO LEGAL; LAWYERS; MARIN MONTESSORI SCHOOL; MENDOZAS; NOE REYES; SECURITY; SOURCE; US IMMIGRATION AND CUSTOMS ENFORCEMENT; UC BERKELEY; UC DAVIS SCHOOL OF LAW; UCSF) (Al Boro; Amana Ayoub; Avila; Blake Chisam; Brian Bilbray; Chris Magnus; Coghlan; Dianne Feinstein; Elected; Elizabeth Larose Dunn; English; Espinozas; Evelyn Sanchez; Feinstein; Haley; Hwang; Johnson; Kamala Harris; Karyn Lang; Kevin Johnson; Kurt Bardella; Lawyer; Lori Haley; Mental; Michael Chertoff; Noe; Norma Espinoza; Philip Hwang; Psychiatrist Dr. Alicia Lieberman; Rachel Moran; RocÃ; Sanchez; Stephen Coghlan; Tim Aitken; Tyche Hendricks; Victor; Zoe Lofgren)

KEYWORDS: (CHILDREN); (CIVIL RIGHTS); (DEPORTATION); (FAMILIES); (ILLEGAL IMMIGRANTS); (PROTEST); (SF)

EDITION: FINAL

Word Count: 2496
4/27/07 SFCHR A1
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.