UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ADRIANA AGUILAR, et al.,                                :

               Plaintiffs,                    :

                                            **MEMORANDUM DECISION**
                                 :              **AND ORDER**

    -against-

                                 :       07 Civ. 8224 (JGK)(FM)

IMMIGRATION AND CUSTOMS
ENFORCEMENT DIVISION OF THE           :
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, et al.,            :

              Defendants.              :
------------------------------------------------------------x

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: <u>06/23/2009</u> |

**FRANK MAAS**, United States Magistrate Judge.

        On January 22, 2009, the Plaintiffs moved for reconsideration and clarification of a Discovery Order ("Order") that I had issued on January 7, 2009. For the reasons set forth below, that motion (Docket No. 137), is denied, except insofar as it seeks clarification of the scope of an "attorneys' eyes only" restriction in the Order.

I.    Background

        The Order denied the Plaintiffs' requests for:

(a) a protective order barring discovery of identifying
immigration information (except to the extent disclosed in the
Second Amended Complaint ("SAC")) and preventing the
Defendants from using discovery designated as confidential
for any purpose other than the defense of this suit; and

      (b) leave for six unnamed Plaintiffs to proceed anonymously.

(See Docket No. 123).

      With respect to the first application, I determined that immigration-related information ("Information") was central to the parties' claims and might help the Defendants demonstrate a lawful basis for their detention of certain Plaintiffs. (Order at 4-5). I also found that the Information might bolster the Defendants' assertions that they suspected illegality at certain residence locations, and also be relevant to the credibility of the Plaintiffs and their witnesses. (Id. at 5).

      I further determined that the spectre of the Information's use in another lawsuit was not sufficient to warrant a broad protective order applicable not only to the putative class, but to anyone "identified through the discovery process." (Id. at 6-7). I nevertheless directed that the Information be limited (at least until trial) to "attorneys' eyes only." (Id. at 7).

      I concluded with respect to the Defendants' second application that the Defendants would be severely prejudiced if the six unnamed Plaintiffs were permitted to proceed anonymously. (Id. at 9). I therefore directed that their names be provided to the Defendants, although I allowed such information to be designated for "attorneys' eyes only," and permitted the anonymous Plaintiffs to be referred to by pseudonyms in public filings. (Id. at 9-10).

On January 22, 2009, the Plaintiffs filed a motion for reconsideration of the Order, alleging that: (a) the Plaintiffs' Information is not relevant to the lawfulness of any seizures because those seizures occurred before the Defendants had obtained any Information; (b) any potential relevance of the Plaintiffs' immigration status to their credibility is insufficient to deny them the requested protective order; (c) there is no basis for requiring the disclosure the Information of third-party witnesses or putative class members; and (d) the Plaintiffs have shown good cause for a protective order. (See Pls.' Mem. at i). The Plaintiffs' motion also seeks to clarify whether the "attorneys' eyes only" designation permits in-house counsel at defendant Immigration and Customs Enforcement ("ICE") to view any information so designated. (See Pls.' Mem. at 19-22). The Defendants join in the Plaintiffs' motion only with respect to this request for clarification. (See Defs.' Mem. at 13-15).

II.  Discussion

    A.  Applicable Law

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also In re Health Mgmt. Sys., Inc. Secs. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (reconsideration is an

"extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources"). Consequently, an abiding conviction that the issue was wrongly decided is not enough to warrant reconsideration.

Local Civil Rule 6.3 gives effect to these precepts by requiring a party seeking reconsideration to set forth the factual matters or controlling decisions that it believes were overlooked. Rule 6.3 is to "be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." Mikol v. Barnhart, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008).

In short, a moving party may not "treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." Polsby v. St. Martin's Press, Inc., No. 97 Civ. 690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (internal quotations omitted).

B.     Immigration-Status Information

The Plaintiffs do not contend that the Court overlooked applicable law. Rather, the Plaintiffs argue in their motion that the Court overlooked critical facts, including the "nature of Plaintiffs' allegations of 'seizure' and Defendants' defenses thereto." (Pls.' Mem. at 6). A "seizure" occurs within the meaning of the Fourth Amendment when a reasonable person, considering all of the surrounding circumstances, would not have considered himself free to leave. Michigan v. Chestnut, 486 U.S. 567,

573-74 (1988). Here, it apparently is undisputed that nine named Plaintiffs were involuntarily taken to detention centers. (Pls.' Mem. at 8). The Plaintiffs nevertheless contend that <u>all</u> of the named Plaintiffs – even those not taken to detention centers – were unlawfully "seized" by the Defendants at the moment the Defendants effected entry into their homes and "round[ed] up" certain of them for questioning. (<u>Id.</u> at 8-9). Because these allegedly unlawful seizures occurred <u>before</u> the Plaintiffs were questioned and revealed any information, the Plaintiffs assert that the Information is not relevant to a determination of the lawfulness of the "searches and seizures" at issue in this case. (<u>Id.</u> at 7, 10).

In their papers, the Defendants distinguish between any initial seizures that may have occurred upon their arrival at a named Plaintiff's home and the subsequent arrest and detention of certain Plaintiffs. (Defs.' Mem. at 6-7). In doing so, their view of the case is not dissimilar to that previously espoused by the Plaintiffs. Indeed, in their SAC, the Plaintiffs alleged that the Defendants "implemented, enforced, encouraged and/or sanctioned a policy, practice and/or custom of . . . stopping, <u>detaining</u>, investigating, searching, <u>and effecting seizures</u> in the absence of a reasonable, articulable suspicion of unlawful activity or probable cause" in violation of the Fourth Amendment. (Order at 4) (citing SAC ¶ 433) (emphasis added).

Now, however, the Plaintiffs appear to be suggesting for the first time that their seizure claim subsumes their detention claim, and that any inquiry thus should be

focused on the Information that the Defendants knew prior to their arrival at the named Plaintiffs' residences.[1] According to the Plaintiffs, "the lawfulness of Plaintiffs' subsequent questioning, arrest and removal flows from the lawfulness of Defendants' entry." (Reply at 3).

The Plaintiffs ultimately may be able to demonstrate that the Defendants' initial entry was unlawful, but at this preliminary stage, the Court cannot assume that this is so. To be sure, the Defendants admit that they lacked probable cause to enter the Plaintiffs' homes, but they also maintain that they did so based on the Plaintiffs' voluntary consent. As the Plaintiffs themselves have noted, consent is an established exception to the requirement that officers have a warrant and probable cause to enter a home. (See Pls.' Mem. at 12, citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). Accordingly, if consent to enter a home is established, to prevail in this case, the Plaintiffs will need to demonstrate that the Defendants' later actions were unlawful. See, e.g., United States v. Deutsch, 987 F.2d 878, 883 (2d Cir. 1993) (upholding arrest of suspect following consensual entry into his home). In that regard, the Information

---

[1] The Plaintiffs' original letter seeking a protective order did not characterize their allegations in this way. (See letter to the Court from Donna L. Gordon, Esq., dated Sept. 11, 2008, at 4 n.1) ("[O]nly what Defendants knew or did not know prior to the seizures and detentions of Plaintiffs . . . is relevant.") (emphasis added)). Similarly, in a subsequent letter to the Court, the Plaintiffs' did not dispute the Defendants' understanding, (see letter to the Court from Ass't U.S. Att'y Kristin Vassallo, dated Sept. 19, 2008, at 2), that one of the SAC's assertions was that the Defendants detained certain Plaintiffs without a lawful basis. (See letter to the Court from Patrick Gennardo, Esq., dated Sept. 23, 2008).

regarding all nine named Plaintiffs may support the Defendants' claim that their actions were proper based on the Information volunteered by these Plaintiffs. (Order at 4-5).

The named Plaintiffs also argue that their Information is not germane because they are litigating the lawfulness of their removal from their homes "before the Executive Office for Immigration Review ["EOIR"], not this Court." (See Pls.' Mem. at 9 n.8). This crabbed reading of the SAC overlooks the extensive emphasis the Plaintiffs have placed upon the actions that the Defendants took in removing the named Plaintiffs from their residences. It also ignores the Plaintiffs' own discovery requests which seek "all documents concerning events occurring after the home raids" and their interrogatory responses, which state that the Plaintiffs' Bivens claims, are "not limited to alleging unconstitutional entries into the homes" and in fact allege, among other things, that the "Defendants violated [their] constitutional rights regarding . . . detention." (See Decl. of Ass't U.S. Att'y Kristin Vassallo, dated Feb. 10, 2009, Ex. D at 3). The fact that the named Plaintiffs may also be litigating the constitutionality of the evidence gathered during their arrests before the EOIR therefore does not preclude the Defendants from defending against the claims of improper detention in this suit.

Furthermore, although the Defendants concede that they did not have probable cause to believe that any of the named Plaintiffs were here illegally before arriving at their residences, and that the named Plaintiffs' immigration status therefore is irrelevant to the issue of consent, (see Pls.' Mem. at 13), this may not hold true for the

putative class members, whose homes <u>may</u> have been raided on the basis of a reasonable suspicion of illegality.  Moreover, the immigration status of the named Plaintiffs and their witnesses is arguably relevant to a determination of their credibility.  (<u>See</u> Order at 5).  As the Court recognized in the Order, an effort to attack credibility based on an inquiry into someone's immigration status frequently is disallowed when that issue is collateral to the parties' claims.  (<u>Id.</u> at 3).  Here, however, the Plaintiffs' immigration status lies at the heart of the parties' claims about the reasonableness of the Defendants' actions.  Additionally, because the parties in this action include both immigrants and the agency that prosecutes immigration offenses, the immigration status of a particular Plaintiff or witness may be relevant to that individual's biases for or against the parties.

Finally, the immigration status of the named Plaintiffs and putative class members may be relevant to their allegations of emotional and mental distress.  (<u>See</u> SAC ¶ 419(d)).  As the Plaintiffs correctly observe, in <u>E.E.O.C. v. First Wireless Group, Inc.</u>, 2007 U.S. Dist. LEXIS 11893, at *12-14 (E.D.N.Y. Feb. 20, 2007), the court precluded such an inquiry in connection with the claimant's emotional distress damage claims.  There, however, the immigration status bore no relation to the harm alleged, which was workplace pay inequality.  Here, by contrast, the Defendants may be able to demonstrate that at least some of a Plaintiff's emotional distress arose from a fear that the Plaintiff might be detained by ICE which existed in advance of an actual raid.

Accordingly, I adhere to my prior determination that the Defendants may inquire about the Information during discovery.

C. <u>Attorneys' Eyes Only Limitation</u>

The Plaintiffs contend that the Order bars "the use of immigration status information gleaned from this litigation in parallel immigration and criminal proceedings." (Reply at 7-8) (citing Order at 7). To the contrary, the Order recognized that such a broad proclusive order might "immunize thousands of undocumented aliens from removal or immigration-related criminal prosecution during or after the pendency of this litigation." (Order at 7). Accordingly, the Order simply required that any Information disclosed during discovery be restricted to "attorneys' eyes only" until trial, so that, in the interim, the Plaintiffs would not have to "be concerned that information concerning their immigration status will be used improperly in connection with parallel proceedings." (<u>Id.</u>).

Both parties request clarification of this "attorneys' eyes only" limitation. The Plaintiffs request that this restriction apply beyond the discovery phase of this case in order to protect the Plaintiffs and their witnesses at trial. (Reply at 8). The Plaintiffs also request that ICE in-house counsel – including those who supervise, but do not directly litigate – be excluded from viewing the "attorneys' eyes only" information, noting that they are "involved in decision-making in parallel proceedings, in which at least nine Plaintiffs are involved." (Pls.' Mem. at 19, 21; Reply at 9). In the alternative, they

request that ICE in-house counsel submit affidavits explaining their need for the information and that they recuse themselves from the parallel proceedings. (Pls.' Mem. at 21).

The Defendants counter that ICE is a defendant in this case, and that its in-house counsel should therefore be "permitted to access discovery in order to assist in the defense of the agency in this action." (Defs.' Mem. at 13). If the Court rules that the Information cannot be used before trial in immigration proceedings, however, the Defendants do not object to precluding attorneys who are actively prosecuting immigration proceedings from viewing any "attorneys' eyes only" material during the discovery phase of this case. (Id. at 14). The Defendants further request clarification as to whether the "attorneys' eyes only" protection extends to mere witnesses and as to the uses of the Information that are proper under the Order. (Id. at 14-15). Finally, the Defendants seek permission to request modification of the Order should criminal conduct be unearthed prior to trial. (Id. at 15).

The "attorneys' eyes only" designation was intended to address the Plaintiffs' concerns arising from ICE's dual role as a defendant in this action and the prosecutor in immigration proceedings. (Order at 5). As numerous courts have recognized, "[i]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." See, e.g., Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co., No. 5: 03 Civ. 165

(HGM/GLS), 2003 WL 1956214, at * 5 (N.D.N.Y. Apr. 24, 2003) (quoting <u>FTC v. Exxon Corp.</u>, 636 F.2d 1336, 1350 (D.C. Cir. 1980)); <u>Sullivan Mkt'g v. Valassis Commc'ns</u>, No. 93 Civ. 6350 (PKL)(JCF), 1994 WL 177795, at *3 (S.D.N.Y. May 5, 1994) (same).  Indeed, notwithstanding the "attorneys' eyes only" designation, the mere fact that ICE in-house counsel also serve as immigration prosecutors heightens the risk that they might inadvertently reveal Information subject to that restriction.  At the same time, however, ICE in-house counsel also may be able to provide valuable assistance to the Assistant United States Attorneys charged with the defense of this action.  In these circumstances, an order absolutely precluding ICE in-house counsel from reviewing the Information would be overkill.  The competing needs of the Plaintiffs, putative class members, and Defendants are adequately addressed by requiring that any ICE in-house counsel who view Information designated "attorneys' eyes only" not also be involved in the prosecution of any immigration proceedings involving an individual whose Information is disclosed.

       The "attorneys' eyes only" designation will apply to any Information, including that concerning witnesses, provided by the Plaintiffs during discovery.  Any information designated "attorneys' eyes only" – even if it reveals criminal activity – therefore may not be used by ICE for immigration prosecutions.  If, however, ICE learns from other sources of illegal activity by the Plaintiffs or their witnesses, it certainly may proceed with a prosecution on the basis of that independently-obtained information.

Furthermore, unless Judge Koeltl rules otherwise, the "attorneys' eyes only" limitation will cease at trial if the Information is used by the defense for a proper evidentiary purpose. (See Order at 7).

III.  Conclusion

As set forth above, the Plaintiffs' motion for reconsideration (Docket No. 137) is denied. The Court further clarifies that the "attorneys' eyes only" designation is applicable to all immigration Information, including that of witnesses, provided by the Plaintiffs during discovery. Any information so designated may be viewed by ICE in-house counsel provided that they are not involved in the prosecution of any related immigration proceedings.

SO ORDERED.

Dated:   New York, New York
         June 23, 2009

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

Honorable John G. Koeltl
United States District Judge

Donna L. Gordon, Esq.
Dewey & LeBoeuf, LLP
Fax: (212) 649-0919

Ghita Schwarz, Esq.
Latino Justice PRLDEF
Fax: (212) 431-4276

Shane Cargo, Esq.
United States Attorney's Office
Fax:  (212) 637-2786