```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ADRIANA AGUILAR, et al.,                       :

                    Plaintiffs,                :
                                                      DISCOVERY ORDER
           -against-                           :
                                                      07 Civ. 8224 (JGK)(FM)
IMMIGRATION AND CUSTOMS                        :
ENFORCEMENT DIVISION OF THE
UNITED STATES DEPARTMENT OF                    :
HOMELAND SECURITY, et al.,
                                               :
                    Defendants.
-----------------------------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/22/09

**FRANK MAAS**, United States Magistrate Judge.

   This case is brought by thirty-two plaintiffs who allege that the defendants violated their rights while searching their homes in 2006 as part of "Operation Return to Sender," a program pursuant to which the Department of Homeland Security sought to identify and arrest persons who had been ordered removed from the United States, but who remained present as fugitive aliens.

   Since Judge Koeltl referred the case to me in July 2008 for general pretrial supervision, I have been asked to resolve a host of discovery disputes. The current issue (which has been lingering for some time) concerns the proper scope of the defendants' discovery relating to the plaintiffs' claims that they suffered physical or emotional injuries as a result of the defendants' conduct.

   On June 23, 2009, I issued an order addressing the discovery of the plaintiffs' medical records. (See Docket No. 167) ("Order"). Specifically, I directed the plaintiffs to respond "forthwith" to the defendants' interrogatories seeking the identification of "any medical providers who treated them for their alleged injuries." (Id. ¶ 2). I also directed that the standard patient authorization form that the defendants' counsel had proposed be modified to incorporate the following balancing language derived from a New York State Office of Court Administration form:

> The purpose of any interview requested by defense
> counsel is to assist the defendants in the defense of

> the Aguilar case, which has been brought by your patient and others. Your patient has not requested that you participate in such an interview. Your participation in an interview is entirely voluntary, and you are free to decline any request for an interview.

(Id. ¶ 3). The Order required the plaintiffs to sign the medical authorization forms once this modification was made. (Id. ¶ 4).

The Order also set forth a procedure to resolve an additional dispute regarding a proposed confidentiality order. (Id. ¶ 2). The following week, after reviewing counter-proposals, I entered such an order, which provided for sensitive information to be designated either "Confidential" or "Highly Confidential," with the latter category applicable to information that was for "attorneys' eyes only." (Docket No. 170).

Although the Order did not expressly provide a deadline for the plaintiffs' submission of the medical provider authorizations, it made clear that expedition was the goal, stating that any records that were produced before a confidentiality order was entered would be deemed subject to its terms and for attorneys' eyes only. (Docket No. 167, ¶ 4).

Subsequently, during a conference on June 30, 2009, plaintiffs' counsel represented that only one plaintiff had alleged any physical injuries arising out of the raids. (3/30/09 Tr. 3-4). Counsel further stated that she did not want to produce that plaintiff's entire medical file because it contained sensitive information unrelated to those injuries. (Id. at 4). In response, I agreed that the plaintiff's medical file could be produced first to plaintiff's counsel, who would review it and produce it to the Court for in camera review, together with any proposed redactions. (Id. at 7-8). I further indicated that this protocol would apply only to that one plaintiff, and that any files reflecting mental health treatment for persons claiming emotional injury would have to be produced in their entirety. (Id. at 9). Both rulings were consistent with the Order, which stated that in the absence of a "showing of extraordinary cause in a particular instance, the Court will not entertain an application to have the plaintiffs' medical records screened by their counsel before they are produced to defense counsel." (Docket No. 167, ¶ 5).

More recently, by letter dated October 13, 2009, plaintiffs' counsel disclosed that they "recently became aware of additional plaintiffs who sought medical treatment." (Letter to the Court from Ghita Schwarz, Esq., dated Oct. 13, 2009, at 3). During a conference on October 15, 2009, to address this and other issues, counsel

indicated that there were four plaintiffs who sought medical treatment related to the raids, as well as an additional plaintiff who sought mental health counseling, including group therapy. (10/15/09 Tr. 104-06). Despite these disclosures, however, counsel for the plaintiffs has yet to tender any medical provider authorizations for any plaintiffs. Indeed, plaintiffs' counsel expressed a desire to review the records of each plaintiff who sought medical or psychological treatment before having them sign authorizations so that counsel could determine whether there was a basis for requesting any redactions. (Id. at 110). The defendants objected to this proposed pre-authorization review as contravening the Order. (Id. at 107-08).

Because this case involves federal claims, federal privilege law applies. See Fed. R. Evid. 501; von Bulow v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987) (in a federal question case, "privileges are governed by the principles of federal law"). Under federal law, unlike New York law, there is no doctor-patient privilege. Compare United States v. Univ. Hosp. of State Univ. of N.Y. at Stony Brook, 575 F. Supp. 607, 611 (E.D.N.Y. 1983) (no federal doctor-patient privilege) with N.Y. C.P.L.R. § 4504(a) (McKinney 2009) (codifying New York's doctor-patient privilege). See also E.E.O.C. v. Nichols Gas & Oil, Inc., 256 F.R.D. 114, 122 (W.D.N.Y. 2009) ("[W]here the claims arise under federal law, the claimants cannot claim protection under the New York physician-patient privilege."). Nevertheless, litigants do have a privacy interest in keeping their sensitive medical records confidential. Manessis v. New York City Dep't of Transp., No. 02 Civ. 359 (SAS) (DF), 2002 WL 31115032, at *2 (S.D.N.Y. Sept. 24, 2002) (citing Olszewski v. Bloomberg, L.P., No. 96 Civ. 3393 (RPP), 2000 WL 1843236, at *2 (S.D.N.Y. Dec. 13, 2000)).

Consistent with its practice in most Federal Torts Claims Act cases, the government seeks the disclosure of ten years of records for each plaintiff claiming a medical injury related to the raids. At the October 15 conference, however, government counsel conceded that a less expansive time period might be appropriate. (Conference Tr. 126:10, Oct. 15, 2009). I agree. See Nichols Gas & Oil, Inc., 256 F.R.D. at 122 (disclosure for ten-year period deemed inappropriate because claimants "maintain privacy interests in their medical records due to the sensitive nature of the information contained therein"). I therefore direct that the plaintiffs who claim physical injuries causally related to the raids deliver to defense counsel within ten days an authorization permitting the disclosure of their medical records for a period beginning one year prior to the date of the raids at their homes and continuing to the present.[1] Plaintiffs who claim physical injuries related to the raids but who did not seek medical treatment will also be required to sign

---

[1] If, after receiving these records, the defendants have a good faith basis for expanding the temporal breadth of a plaintiff's disclosures, they may make a further application to the Court.

authorizations for the same time period, since the defendants plainly are entitled to explore whether the alleged problems predated the raids. Additionally, to ensure that the privacy interests of the plaintiffs who are being required to execute authorizations are honored, the defendants are directed to treat any medical records that they receive as "Highly Confidential," i.e., for "attorneys' eyes only," unless the Court otherwise directs.

   Despite the lack of a general federal doctor-patient privilege, "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." Jaffee v. Redmond, 518 U.S. 1, 15 (1996). As the Supreme Court has explained, the greater protection accorded to mental health records is justified because treatment for physical ailments "can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests," while effective psychotherapy "depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure." Id. at 10. Nevertheless, as the plaintiffs evidently concede, the psychotherapist-patient privilege is waived when a plaintiff, as here, puts her mental status in issue through a claim of something more than "garden variety" emotional distress. Sims v. Blot, 534 F.3d 117, 141 (2d Cir. 2008). Accordingly, any plaintiffs who claim emotional injuries beyond "garden variety" emotional distress will be required to authorize the disclosure of the records of the counseling they received for the period from one year prior to the date of the raid through the present. These authorizations also are to be delivered to defense counsel within ten days.

   As noted above, plaintiffs' counsel thus far has represented that there is only one plaintiff who received mental health counseling as a result of the raids. Counsel further indicates that this counseling, at least in part, involved group therapy. Since the other participants in the group sessions obviously have not waived their privilege, the mental health provider(s) whose records are sought will be permitted to delete from the records produced any information that identifies persons other than the plaintiff who received treatment. The provider(s) also will be permitted to redact any information pertaining exclusively to persons other than the plaintiff. Once those redactions are made, however, the provider will be required to produce those records directly to defense counsel.

   Finally, I note that the redactions proposed for the plaintiff whose records I reviewed, together with the colloquy during the October 15 conference, confirm that plaintiffs' counsel sought to protect from disclosure any medical information arguably unrelated to the claims in this case that the plaintiff might conceivably view as embarrassing. The process of obtaining those records, reviewing them for such material, and presenting them to the Court for in camera review has delayed their production for

4

nearly four months. If we were to follow the same process with respect to other plaintiffs claiming physical or emotional injuries, it would be impossible to comply with the fact discovery deadline in this case, which has already been extended three times, and which is currently December 15, 2009. Accordingly, the Court does not intend to undertake an in camera review of any records to be produced pursuant to the authorizations described above, unless the plaintiffs submit a detailed affidavit from the particular patient explaining precisely what treatment the patient seeks to shield from disclosure and the rationale therefor. Any such affidavits may be submitted under seal and ex parte, but must be received by November 2, 2009. This precautionary procedure is not intended to become the default procedure related to the production of medical records. Rather, as I indicated previously, absent a showing of extraordinary circumstances, I do not intend to conduct any further in camera reviews.

SO ORDERED.

Dated:     New York, New York
           October 23, 2009

_____
FRANK MAAS
United States Magistrate Judge

5

Copies to:

Honorable John G. Koeltl
United States District Judge

Donna L. Gordon, Esq.
Dewey & LeBoeuf, LLP
Fax: (212) 649-0919

Ghita Schwarz, Esq.
Latino Justice PRLDEF
Fax: (212) 431-4276

Shane Cargo, Esq.
United States Attorney's Office
Fax: (212) 637-2786