```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
                                    :
ADRIANA AGUILAR, et al.,            :
                                    :
                    Plaintiffs,     :
                                    :
          -v-                       :
                                    :
IMMIGRATION AND CUSTOMS             :
ENFORCEMENT DIVISION OF THE UNITED  :
STATES DEPARTMENT OF HOMELAND       :
SECURITY, et al.,                   :
                                    :
                    Defendants.     :
----------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: APR 1 6 2012

07 Civ. 8224 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

In 2007, twenty-four individuals of Latino background filed this action for constitutional and other violations relating to alleged warrantless home searches.[1]  In addition to claims for monetary damages, on September 22, 2011, twenty-one of the original named plaintiffs moved for class certification with respect to their request for permanent injunctive relief pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.  Plaintiffs do not seek class certification relating to their damages claims.

The Court held oral argument on the motion for class certification on January 4, 2012.  (See Dkt. No. 312.)

---

[1] Plaintiffs have amended their complaint three times--i.e., the Fourth Amended Complaint is the operative pleading.  Various defendants who were then part of the action moved to dismiss on a variety of grounds.  The motion to dismiss was decided on August 1, 2011, dismissing a number of defendants from the action.  Aguilar v. Immigration and Customs Enforcement Div. of the U.S., 811 F. Supp. 2d 803 (S.D.N.Y. 2011).

1

Additional submissions in support of and in opposition to plaintiffs' motion for class certification were allowed thereafter. (See Dkt. Nos. 334, 341, 343.) The motion was fully briefed in March 2012.

For the reasons set forth below, plaintiffs' motion for class certification is DENIED.

BACKGROUND

The parties do not dispute that during 2007, Immigration and Custom Enforcement ("ICE") agents conducted a series of home raid operations in the New York area. Those operations were carried out under the direction of ICE's New York Detention and Removal Office. Each of the named plaintiffs in this action was subject to a home searched by ICE agents and others acting with them (e.g., police officers from local police departments) during raids conducted in February, March, April, or September 2007. (See Fourth Am. Compl. ("Compl.") (Dkt. No. 202) ¶¶ 23, 27, 29, 31, 35.)

The complaint asserts that none of the raids was conducted pursuant to a duly authorized warrant, voluntary permission, or invitation. (See, e.g., Compl. ¶¶ 1, 5, 23, 25, 27, 29, 31, 33, 35.) Rather, the raids unlawfully targeted Latinos for search and arrest irrespective of immigration status, but likely based upon erroneous assumptions and presumptions regarding immigration status. (Compl. ¶ 10.)

2

The complaint avers that during each raid, armed agents surrounded and/or entered the homes of Latinos, usually pre-dawn, and with a show of force. (Compl. ¶ 5; see also, e.g., id. ¶ 35.) Plaintiffs allege that the agents obtained entry illegally, using force, sometimes pushing past minors, using illegal ruses suggesting an emergency was occurring within the house and similar illegal techniques. The complaint recites that these raids resulted in the illegal detention of plaintiffs, psychological and physical abuse, and the destruction of private and personal property in violation of, inter alia, the Fourth and Fifth Amendments to the U.S. Constitution. (Compl. ¶ 1.)

The complaint further alleges that defendants have conducted, continue to conduct, and plan to conduct in the immediate future unconstitutional and abusive "raids of homes occupied by Latino persons within the jurisdiction of the New York City field office of ICE, including the homes of the named plaintiffs." (Id. ¶ 2.)

There are a variety of additional facts relating to each of the raids and each of the named plaintiffs detailed in the lengthy and detailed complaint as well as referred to in the Court's ruling on the motion to dismiss. For purposes of this motion, the Court will set forth only those facts relevant to determination of this motion and assumes familiarity with the

3

facts set forth in the Complaint, the Court's decision on the
motion to dismiss, and other materials filed on the docket for
additional factual detail.

This case has been actively and well litigated since it was
filed. Dewey & LeBoeuf took this case on as a pro bono matter,
working with LatinoJustice PRLDEF, and they and the Government
have handled it with great professionalism throughout.  There
has been voluminous document discovery (see, e.g., Defs. Resp.
to Pls.' Supp. Br. in Support of Their Mot. for Class Cert.
("Defs. Supp. Resp.") at 5), over 125 depositions of, inter
alia, plaintiffs, ICE agents, and others involved in the raids
(see, e.g., id. at 9 (referring to numerous depositions); Pls.'
Mem. of Law in Support of Their Mot. for Class Cert. ("Pls.
Mem.") at ns. 8-19). The record provides detailed insight into
the operations, the harm plaintiffs allege they have suffered,
and general practices and procedures at the agencies which
participated in, authorized, or had oversight over the raids.

The issue currently before this Court is whether there is a
sufficient basis in this extensive factual record to support
certification of a class for prospective injunctive relief.  As
discussed below, despite the extent of the record and the care
with which it was assembled, there is an insufficient basis for
this Court to conclude in 2012 that plaintiffs, as to whom
events occurred in 2007, necessarily and in fact share

sufficient common issues with other Latinos in the New York area in 2012 to support certification of the injunctive class sought. Plaintiffs seek certification of a class consisting of:

> Persons who are (1) Latino; (2) reside within the jurisdiction of ICE New York; and (3) who have been, or in the future will be, subject to a home raid operation.

(Pls. Supp. Br. In Support of Their Mot. for Class Cert. ("Pls. Supp. Br.") at 1.)

At oral argument, plaintiffs agreed that this class could potentially include approximately two million Latinos residing in the New York area; and that the definition of who is "Latino" is open to subjective interpretation.

DISCUSSION

I.   LEGAL STANDARD

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 23.  To be certified, a putative class must meet all four prerequisites of Rule 23(a), and at least one of the subsections of Rule 23(b). Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548-49 (2011).

Rule 23(a) requires that plaintiffs seeking certification first demonstrate that the (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or

defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Those requirements are colloquially referred to, respectively, as numerosity, commonality, typicality, and adequacy.

The party seeking class certification must demonstrate by a preponderance of the evidence that they have met the elements of Rule 23(a).  Novella v. Westchester Cty., 661 F.3d 128, 149 (2d Cir. 2011).

Here, plaintiffs have sought certification of a class seeking imposition of mandatory and prohibitory injunctive relief pursuant to Rule 23(b)(2).  (See Compl. ¶ 442.) Plaintiffs must therefore also demonstrate that they meet the requirements set forth in that rule--i.e., that the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.  Fed. R. Civ. P. 23(b)(2).

Cases alleging violations of civil rights have typically been among the kinds of cases for which injunctive classes have been certified.  See Amchem v. Windsor, 521 U.S. 591, 614 (1997); see Marisol A. v. Guiliani, 126 F.3d 372, 378 (2d Cir. 1997).

In 2011, the Supreme Court decided Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011).  There can be little doubt that

the Supreme Court accepted certiorari and decided this case for a reason.  It reiterates and reemphasizes the principles which must guide a district court's determination of class certification, and in particular, with respect to an injunctive class.  It is possible that had the plaintiffs here moved for class certification prior to the issuance of Wal-Mart, and long before 2012, that the outcome here would be different.  Nevertheless, Wal-Mart is controlling precedent, and five years have elapsed between when this case was filed and today.  Those are important factors in this Court's decision.

In Wal-Mart, several named plaintiffs brought a purported class action on behalf of all female employees of Wal-Mart nationwide.  131 S. Ct. at 2547.  Plaintiffs claimed that there was a pattern and practice whereby managerial employees within Wal-Mart exercised their discretion regarding pay and promotion to the alleged disadvantage of women in violation of Title VII of the Civil Rights Act.  Id. at 2548.  Justice Scalia wrote, "We are presented with one of the most expansive class actions ever . . . comprising about one and a half million plaintiffs."  Id. at 2547.  Plaintiffs sought declaratory and injunctive relief along with back-pay and punitive damages.  Id.

The Supreme Court acknowledged that

plaintiffs . . . do not allege that Wal-Mart has any express corporate policy against the advancement of women. Rather, they claim that their local managers'

discretion over pay and promotions is exercised
disproportionately in favor of men, leading to
unlawful disparate impact on female employees.

Id. at 2548.  The class that plaintiffs sought to certify in

Wal-Mart consisted of "[a]ll women employed at any Wal-Mart

domestic retail store at any time since December 26, 1998, who

have been or may be subjected to Wal-Mart's challenged pay and

management track promotions policies and practices." Id. at

2549.  Plaintiffs attempted to demonstrate common questions of

law and fact through a statistical analysis that showed pay

disparities between men and women, numerous anecdotal reports of

discrimination from 120 women, and a "social framework" analysis

submitted by a sociologist.   Id.

The Supreme Court began its analysis of whether class

certification was appropriate with reference to longstanding

precedent that the class action "is an exception to the usual

rule that litigation is conducted by and on behalf of the

individual named parties." Id. (citing Califano v. Yamasaki,

442 U.S. 682, 700-702 (1979)).  The Court stated that the "crux

of this case is commonality" and acknowledged that any

competently crafted class complaint can raise common questions.

Id. at 2550.

Importantly, the Court reiterated that Rule 23 is not a

mere pleading standard; a party seeking class certification must

demonstrate that there are "in fact sufficiently numerous

parties, common questions of law or fact, etc." Id. at 2551.
The Court made it clear that the trial court should and must
undertake a rigorous analysis to determine whether the
prerequisites of Rule 23(a) have been satisfied and that
frequently this analysis overlaps with an analysis of the merits
of plaintiffs' underlying claim, which, whatever the outcome,
cannot be helped. Id. at 2552 ("proof of commonality
necessarily overlaps with respondents' merits contention that
Wal-Mart engages in a pattern or practice of discrimination").

The Court then stated that in established case law in
pattern-or-practice cases, the plaintiff tries to prove by a
preponderance of the evidence "that discrimination was the
company's standard operating procedure[,] the regular rather
than the unusual practice." Id. at 2552 n.7 (citations
omitted). Successful proof of this pattern or practice would
justify injunctive relief against continued discrimination. Id.

The Supreme Court held that whether a class of persons has
experienced the same injury must be "abridged by significant
proof that an employer operated under a general policy of
discrimination." Id. at 2553 (citation omitted). The Court
found compelling that Wal-Mart's announced policy forbids sex
discrimination and imposes penalties for denials of equal
employment opportunity. Id.

The Supreme Court in Wal-Mart did acknowledge its own statement in Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1999), that civil rights cases alleging class-wide discrimination are prime examples of what (b)(2) was intended to cover. Id. at 2558. However, the Court also referred to the fact that the Advisory Committee notes accompanying the Rule reflected a series of decisions challenging racial segregation (id.)--a practice which under the cases decided decades ago was then still practiced in certain places and was certainly amenable to sweeping injunctive relief to solve a common question.

## II. RULE 23(a)

### A. Numerosity

The parties spent little time, as was perfectly appropriate, addressing numerosity. This Court assumes that the class as defined--i.e., one consisting of all Latinos in the New York area--would satisfy that requirement well beyond a preponderance of the evidence. See Novella, 661 F.3d at 144 (finding that "the 'numerosity' requirement is satisfied when the class comprises 40 or more members" (quotation marks and citations omitted)); see also Fed. R. Civ. P. 23(a)(1).

### B. Commonality

Plaintiffs here allege that New York ICE has a policy, pattern, and practice of conducting warrantless home raids on

Latinos.  (See Pls. Supp. Br. at 1.)  Specifically, plaintiffs
assert that "[c]arried out under the auspices of nationwide
operational plans and consistent with established policies,
these home raid operations--and the actions of Ice agents who
conducted them--shared coercive and unlawful characteristics."
(Id.)  Plaintiffs also allege that defendants admit that both
the operations and the challenged policies driving ICE agents'
conduct continue.  (Id.)  These are assertions--and at this
stage, an important task of this Court is to test these
assertions against the current record.

As in Wal-Mart, the critical question before this Court is
whether the named plaintiffs have sufficient commonality with
the class they propose to represent to support certification.
This Court approaches that question, as directed by the Supreme
Court, by undertaking a rigorous analysis of the question as to
whether plaintiffs have substantial proof of an unconstitutional
or illegal policy or practice that in fact gives rise to common
questions.  131 S. Ct. at 2551-53, 2556.  A set forth above, as
in Wal-Mart, plaintiffs here also challenge an allegedly illegal
policy, pattern, or practice.  However, the proposed class here
consists not only of Latinos who were subject to the home raids
that occurred in 2007, but extends to the present and includes
all those Latinos in the New York area "who have been, or in the
future will be, subject to a home raid operation."  (Pls. Mem.

11

at 2.)  Accordingly, whether there is substantial proof of a
policy, pattern, or practice in 2012 that could or would subject
Latinos in 2012 and in the future to home raids that raise the
same common constitutional and legal questions as the named
plaintiffs (as to whom home raids occurred in 2007) is directly
at issue.

It is certainly the case that the named plaintiffs
themselves share common questions regarding the
constitutionality and legality of the home raids to which they
were subjected.  Based on the facts in the record on this motion
(and the record on this motion is voluminous), there can be
little argument that there are serious common questions
regarding whether the 2007 raids were performed in a
constitutionally and legally appropriate manner.

The fact that the Latinos who were subject to raids in 2007
share common questions does not, however, automatically confer
on Latinos in the New York area in 2012 and beyond the same
potential commonality.  As directed by the Supreme Court, this
Court must undertake its own rigorous analysis of that question.
Doing so requires that this Court ask, in a merits-like inquiry,
whether plaintiffs have demonstrated by substantial evidence
that the policies, patterns, and practices which were in
existence in 2007 continue today, thereby subjecting Latinos
today and into the future to the risk of similar constitutional

12

and illegal misconduct.  Had the issue of class certification been determined in 2008, this timing issue perhaps would not figure significantly in the Court's analysis.  After the passage of more than five years, however, and in the context of a case that seeks to impose prohibitory and mandatory injunctive relief that would cover a huge class of all Latinos in the New York area into the future, the issue takes on great significance.

Plaintiffs assert that the same policies, patterns, and practices existing in 2007 continue to exist today.  As support for their position, they cite a host of evidence including requests for admissions, hearing and deposition transcripts. (See Pls. Supp. Br. at 4-9.)  The crux of their argument is that the agents involved in the 2007 home raids and others admit that existing policies, handbooks, operations that utilize ruses, operational plans that call for a significant show of force, and policies which permit systematic sweeps, all remain in force and effect.  (Id. at 4.)  They also cite to two affidavits which refer to allegedly similar conduct by ICE agents during a home raid conducted in 2009.  (Id. at 6.)[2]

There are two points with which this Court must grapple in connection with plaintiffs' proof and arguments in this regard. First, the fact that unlike in other cases in which there are

_____

[2] Plaintiffs also urge that similar conduct is ongoing across the nation. (Pls. Supp. Br. at 7-8.)  The inquiry for this Court, however, is whether, inter alia, commonality is established for the proposed class, which is a class geographically limited to the New York area.

policies that facially evidence purposeful, wrongful conduct, here, the proof is closer than that at issue in Wal-Mart. Here, the policies and procedures which the ICE agents and others working with them were--and are--to follow in conducting home raids prohibit the very type of misconduct alleged to have occurred here. See Wal-Mart, 131 S. Ct. at 2553. As a result, while it may well be the case that plaintiffs can cite numerous instances in which agents concede that policies have remained in place (and they have), according to defendants, those policies counsel constitutional and legal behavior. (Defs. Supp. Resp. at 4-10.) Admissions of continued legal policies cannot, then, support common questions regarding illegal and unconstitutional policies.

That question then bleeds into the second point which is whether this Court should consider relevant to commonality the fact that five years have passed between the 2007 home raids and today. Put another way, does the passage of five years render more tenuous the connection between the conduct to which the named plaintiffs were subjected, and therefore the common questions which they as a group may face, and the questions Latinos in the New York area today might face in connection with home raids? Should this Court assume that the same conduct that was in direct violation of ICE and DOJ policies and procedures

that occurred in 2007 occur today?[3] This Court finds that answering both those questions is highly relevant to whether commonality exists.

Based on the record before this Court, it appears that in certain instances, ICE agents and those working with them may have acted inappropriately during the 2007 home raids about which plaintiffs complain. There are motions for summary judgment pending which delve further into the specific 2007 record with regard to that conduct. However, while the plaintiffs have proffered that testimony, handbooks, etc. indicate that policies remain unchanged, defendants counter that that is because such policies are in compliance with constitutional and legal requirements; thus, the fact that the policies have not changed is not proof of an ongoing problem. (Defs. Supp. Resp. at 9-10.) With respect to each area in which plaintiffs claim misconduct occurred, defendants have put forth substantial evidence that policies indicate that conduct should remain within legal bounds: legal ruse techniques, legal limits on use of force, and policies on cartilage, protective sweeps, and detentive questioning. (Id. at 9.)

Importantly, the heart of plaintiffs' proposed class relates to conduct directed at Latinos. With the exception of

---

[3] It is worth mentioning that one relevant factor is the change of administrations and numerous changes in leadership at the DOJ since 2007. This raises further questions as to whether assumptions regarding continuity are appropriate.

their statistical analysis, none of the evidence that plaintiffs have submitted in support of their motion on class certification supports the proposition that there is any sort of institutional policy to target Latinos in particular.  No doubt there are home raids directed at various groups for various reasons at various times (e.g., as defendants point out, an effort to target a "Chinese mob" might disproportionately target people of Chinese descent (Defs. Supp. Resp. at 11).  Plaintiffs' statistical analysis is based on lists of targets for the 2007 operations. It is, as in Wal-Mart, standing alone, insufficient to provide a foundation for a determination that ICE agents today engage or would engage in intentional targeting of Latinos for unconstitutional home raids.  See Wal-Mart, 131 S. Ct. at 2553-55 (requiring "significant proof," and admonishing that using statistical analyses must be done carefully and with scientific rigor).  But in addition, the analysis of target lists alone does not answer the question of whether the raids conducted pursuant to any target lists (assuming arguendo that there are similar target lists today) are actually carried out in an illegal manner.  Put another way, target lists say nothing about conduct during the raid itself; the core common questions asserted regard conduct during the raids.

Notably, each of the named plaintiffs herein asserts that he or she was not on a target list.  Rather, the claim is, in

16

part, that agents went well beyond the target lists when they
conducted the 2007 home raids.  Thus, whether the target lists
consisted of all Latinos, a majority of Latinos, or no Latinos
does not explain whether the raids themselves were planned to
consist of illegal actions, whether they were planned to go
beyond the target lists to include other individuals, and
whether an analysis of target lists that might exist today would
in any event yield the same results.

Similarly, the particular anecdotal evidence set forth in
detail in the complaint and in the depositions and affidavits
of plaintiffs relating to the 2007 home raids, and in the
affidavits relating to the 2009 incident, are insufficient to
demonstrate the existence of a policy--let alone an ongoing
one--of intentional targeting and intentional misconduct.  In
Wal-Mart, the Supreme Court declined to find that 120 affidavits
"reporting experiences of discrimination" provided a sufficient
basis to find a policy of discrimination existed.  131 S. Ct. at
2556.  The 120 affidavits represented 1 in every 12,500 class
members.  Id.  As defendants point out in their papers in
opposition to this motion, the proposed class here consists of
approximately two million Latinos.  This results in one
anecdotal incident for every 250,000 potential class members.
(Defs. Supp. Resp. at 12.)  That falls far short of the standard
set by the Supreme Court.

Defendants assert (and this fact is not contradicted by plaintiffs, though they take obvious issue with implementation), that "ICE has an explicit, DOJ-endorsed policy prohibiting discrimination." (Defs. Supp. Resp. at n.4.) That policy repudiates the assumption that "any particular individual of one race or ethnicity is more likely to engage in misconduct than any particular individual of another race or ethnicity." (Id.) This same DOJ policy requires more "restrictions on the consideration of race and ethnicity in Federal law enforcement than the Constitution requires." (Id.)

Defendants have pointed to evidence in the record that the policies in fact produced during discovery state in clear terms that in the absence of a warrant or exigent circumstances, officers and agents must obtain consent to enter anyone's home. (Defs. Supp. Resp. at 3 (citing Decl. of Darren Williams Ex. 1; Decl. of Jeffrey Knopf Ex. 2).) In addition, defendants produced 12,000 pages of training materials concerning, inter alia, specific training in complying with the law to insure consent based operations and a specific program on how to comply with the Fourth Amendment. (Defs. Supp. Resp. at 5-6.) The Fourth Amendment training materials state that ruse techniques must not be coercive and "may not convince resident[s] that they have no choice but to let [the] officer inside." (Id. at 5.) This same material specifically lists the types of ruse

techniques allowed, none of which are among those claimed by
plaintiffs to have been the source of the misconduct alleged in
the complaint.  (Id.)  Some of the training materials produced
by defendants during discovery date from 2009 or later.  (Defs.
Supp. Resp. at 8.)  Many agents testified that defendants'
policies do not condone the complained of techniques alleged to
have been used during the 2007 raids.  (Id. at 9.)

Because there is substantial evidence that no policy in
fact condones the constitutional and other misconduct alleged,
common questions of fact or law cannot be based on the existence
of the policies themselves.  The absence of policies condoning
the behavior asserted as wrongful in the complaint necessarily
means that plaintiffs must be alleging only that demonstrated
pattern or practice create common questions.

Whether or not a particular pattern or practice (or sets
thereof) create common questions as between the named plaintiffs
and the proposed Latino class depends on a rigorous analysis of
what those patterns and practices are, and how and whether they
are applicable to the proposed class as a whole.  In the absence
of application to the proposed class as a whole (e.g., including
Latinos from 2007 to today), such alleged patterns and practices
would not be amenable to resolution through single sweeping
injunction.

Here, all of the evidence of pattern and practice (with the exception of the two affidavits from individuals who were the subject of a single home raid in 2009 (see Pls. Supp. Br. at 6-7)), relates to home raids in 2007.  The evidence in the record does support common questions regarding whether the defendants' conduct in 2007 was constitutional or otherwise illegal.  That, however, is a separate issue from whether there is substantial evidence of a pattern and practice raising common questions regarding home raid patterns and practices in 2012.  The only evidence in the record with respect to the present time is the testimony from the defendant deponents that the policies which set forth constitutionally and legally compliant procedures remain in place.

There is, in fact, no evidence in the record of a single act taken by ICE agents or others working with them on home raids in the past four years that suggests that Latinos in the New York area have been subjected to unconstitutional or illegal home searches.  It is possible to imagine that if there were such practices that were targeted against Latinos, that those Latinos would in fact have the type of common questions that Rule 23(a) requires.  However, speculation does not comply with the Supreme Court's requirement of substantial evidence.

It is true that discovery in this case closed some time ago.  And it is also true that there were decisions made

regarding what time period discovery would cover.  Those factors
necessarily impacted whether a court sitting in 2012 could find
that the requirement of commonality under Rule 23 had been
satisfied based on conduct occurring five years prior.

It is possible that the fact of this litigation itself has
drawn attention to certain practices that assisted in ultimate
achievement of plaintiffs' injunctive goals--i.e., to prevent a
pattern and practice of recurrence of the allegedly illegal
ruses and home raids that are the subject of this action.  This
Court does note that there is an incident in 2009 that is the
subject of supplemental declarations.  (Dkt. Nos. 335, 336
(declarations filed under seal); see also Pls. Supp. Br. at
6-7.)  However, evidence that one home raid in five years had
similar alleged misconduct as that described in the complaint
(and the home raid took place approximately three years ago)
both suggests little evidence of a remaining serious issue and
is, in any event, itself insufficient to establish common
questions for a class that would include almost two million
Latinos in the New York area in 2012, particularly under the
standard set forth in Wal-Mart.

Having failed to meet the factor of commonality, this Court
need not reach the remaining two factors of typicality and
adequacy under Rule 23(a).  It is worth noting that 23(a) does
not require a balancing of the factors--it requires that each of

the factors be proven by a preponderance of the evidence.   See
Wal-Mart, 131 S. Ct. at 2548.   Thus, whether or not the final
two, and the first, of the four Rule 23(a) factors would support
class certification is irrelevant.

III. RULE 23(b)(2)

        The named plaintiffs herein cannot establish the
commonality required to satisfy Rule 23(a).   Accordingly, the
Court never reaches the provisions of Rule 23(b)(2), which
govern classes seeking injunctive relief.   Nevertheless, this
Court notes that for the same reasons that plaintiffs are unable
to satisfy the commonality requirement of Rule 23(a), they are
unable to satisfy the requirement of 23(b)(2) that that the
party opposing the class has acted or refused to act on grounds
generally applicable to the class, thereby making appropriate
final injunctive relief or corresponding declaratory relief with
respect to the class as a whole.   See Fed. R. Civ. P. 23(b)(2).
Here, because the proposed class would consist of Latinos in the
New York area who might be subject to home raids in 2012 or the
future, and because there is no evidence that defendants
currently engage in ongoing misconduct with respect to such
raids, plaintiffs cannot show that defendants' actions are
"generally applicable to the class."   Fed. R. Civ. P. 23(b)(2).

        The type of injunctive relief that plaintiffs seek is both
prohibitory: to prevent the repetition of certain misconduct;

and mandatory: they seek training and other affirmative conduct.
Without reaching a determination as to the ultimate merits of
this matter, it is important that this Court not casually
certify an injunctive class that could impose significant cost
and burden on governmental entities.

CONCLUSION

For the aforementioned reasons, plaintiffs' motion for
class certification is DENIED.

The Clerk of the Court is directed to terminate the motion
at Docket No. 294.


SO ORDERED:

Dated:     New York, New York
           April **16** , 2012


                    _K— B. Forrest_

                    KATHERINE B. FORREST
                    United States District Judge